# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| Michael Moreland, individually and on behalf of all others similarly situated, | 2:22-cv-00002 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Walmart Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Walmart Inc. ("Defendant") manufactures, labels, markets, and sells antitussive drug products intended to treat colds and flu promoted as "Non-Drowsy" under its Equate brand ("Product").




2. Consumers want to take over-the-counter drug products that help them feel better, but also allow them to be active, either for work or they desire to maintain control of their senses.

3. Though the Product is represented as "Non-Drowsy," it contains dextromethorphan hydrobromide, which is well-known for causing drowsiness.

4. Dextromethorphan hydrobromide is an approved active ingredient for oral antitussives. 21 C.F.R. 341.14(a)(4).

5. Though the Drug Facts on the back of the Product do not require disclosure about dextromethorphan hydrobromide's connection to drowsiness, Defendant is still required to refrain from statements that may be half-truths, or false. 21 CFR 341.74(c)(4)(v); 21 CFR 341.74(b)(3)(vi).

6. By promoting the Product as "Non-Drowsy," when this is false, is contrary to what is required and misleads consumers who expect they are purchasing a cold and flu product that will not make them drowsy or increase the chances they become drowsy.

7. The Product contains other representations which are misleading.

8. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

9. The value of the Product that Plaintiff purchased was materially less than its value as represented by defendant.

10. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

11. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

12. The Product is sold for a price premium compared to other similar products, for no less than $10.47 per two 12 oz bottles, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

13. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

14. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

15. Plaintiff Michael Moreland is a citizen of Illinois.

16. Defendant Walmart Inc., is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas

17. Defendant transacts business within this District through sale of the Product to residents via its Walmart Supercenters, Sam's Club stores, and the websites of each.

18. Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

19. Venue is in Urbana Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in Champaign County, i.e., Plaintiff's purchase and use of the Product and his awareness of the issues described here.

Parties

20. Plaintiff Michael Moreland is a citizen of Rantoul, Champaign County, Illinois.

21. Defendant Walmart Inc., is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

22. Walmart is an American multinational retail corporation that operates a chain of over

3

5,000 supercenters nationwide, selling furniture to groceries.

23. Walmart employs almost 1.5 million workers and provides a path to the middle-class.

24. Walmart is based on selling consumers items they need and want at affordable prices.

25. Walmart's size and purchasing power translates to consumers getting more for their money, even though this means it earns less profit.

26. Walmart's variety of goods enhance the quality of life for people in rural areas and small towns.

27. Walmart sells Americans' prescription drugs at more affordable prices than the big pharmacy chains.

28. Walmart responds to natural disasters, in ways similar to government or the Red Cross.

29. Walmart has been a leader in environmental sustainability, through generating renewable energy through solar panels and a dedication to recycling.

30. In many areas, consumers have been shown to trust Walmart more than government.

31. Walmart is a brand with a significant amount of goodwill, trust and equity when it comes to consumer purchasing.

32. While Walmart stores sell leading national brands, they sell a large number of products under one of their private label brands, Equate.

33. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

34. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

35. Products under the Equate brand have an industry-wide reputation for quality and

value.

36. In releasing products under the Equate brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

37. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

38. That Equate branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

39. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

40. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

41. Private label products under the Equate brand benefit by their association with consumers' appreciation for the Walmart brand as a whole.

42. The development of private label items is a growth area for Walmart, as they select only top suppliers to develop and produce Equate products.

43. The Product is available to consumers from Defendant's stores in this District, including Walmart Supercenters and Sam's Club stores, and from its websites, directly to citizens of this District.

44. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 845 Broadmeadow Road Rantoul IL 61866 between December 2021 and January 2022, among other times.

45. Plaintiff believed the Product did not contain ingredients which could cause

drowsiness.

46. Plaintiff understood the front label claims to mean he would not become drowsy, even though this was false.

47. Plaintiff bought the Product because he expected it did not contain ingredients which could cause drowsiness because that is what the representations said and implied.

48. Plaintiff relied on the words and images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through any in-store marketing.

49. Plaintiff was aware of Defendant's long history of selling OTC drug products under the Equate brand, and how Equate products were labeled transparently, and even superior to the more expensive national brands.

50. Plaintiff trusted the Equate brand because it was backed by Defendant's reputation for putting its customers first.

51. Plaintiff was disappointed because he believed the Product did not contain ingredients which could cause drowsiness and did cause drowsiness and increase the likelihood of drowsiness.

52. Plaintiff bought the Product at or exceeding the above-referenced price.

53. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

54. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

55. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

56. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

57. Plaintiff is unable to rely on the labeling and representations about the issues described here for not only this Product, but other similar products, because he is unsure of whether those representations are truthful.

## Class Allegations

58. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and a
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Michigan, Iowa, Rhode Island, Georgia, North Dakota, Texas, New Mexico, Virginia, New Hampshire, South Dakota, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

59. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

61. Plaintiff is adequate representative because his interests do not conflict with other members.

62. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

65. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Plaintiff and class members desired to purchase a product that did not contain ingredients which could cause drowsiness.

68. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

69. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

70. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

71. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

72. Plaintiff relied on the representations that the Product did not contain ingredients which could cause drowsiness.

73. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

74. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

75. Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

76. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

77. In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

78. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it did not contain ingredients which could cause drowsiness.

79. Defendant directly marketed the Product to consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

80. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

81. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product did not contain ingredients which could cause drowsiness.

82. Defendant's representations affirmed and promised that the Product did not contain ingredients which could cause drowsiness.

83. Defendant described the Product as one which did not contain ingredients which could cause drowsiness, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

84. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

85. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

86. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

87. Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

88. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

89. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

90. The Product was not merchantable because it was not fit to pass in the trade as

advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the container or label.

91. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it did not contain ingredients which could cause drowsiness, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

93. Defendant had a duty to truthfully represent the Product, which it breached.

94. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

95. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to transparency and putting its customers first.

96. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

97. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

98. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

99. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

100. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it did not contain ingredients which could cause drowsiness.

101. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

102. Defendant knew of the issues described here yet did not address them.

103. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

104. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: January 4, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com